IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Freddie Crespin,<br><br>               Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>               Respondents. | No.  CV-15-00992-PHX-SPL<br><br>**ORDER** |

Before the Court is Magistrate Judge Eileen S. Willett's Report and Recommendation ("R&R") (Doc. 21) in which she recommends this Court grant Petitioner Freddie Crespin's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) ("Petition"). The Court agrees with Judge Willett's determination that Petitioner's sentencing was an objectively unreasonable application of *Miller v. Alabama*, 567 U.S. 460 (2012), and will grant the Petition.

**I.      Factual Background**

Petitioner Freddie Crespin is serving a life sentence without the possibility of parole for first-degree murder. (Doc. 11 at 1.) Petitioner was sixteen years old at the time of the crime, but was charged as an adult. (Doc. 11-1 at 74.) Petitioner pleaded guilty to first-degree murder in the Pinal County Superior Court, CR95021006—a crime punishable by (1) death by lethal injection, (2) life imprisonment without the possibility of parole (natural life), or (3) life imprisonment with no parole until at least 25 years have been served. (Doc. 11-1 at 2.) The parties stipulated to a sentence of natural life. (Doc. 11-1 at 2.)

Through counsel, Petitioner filed a petition for post-conviction relief on November 20, 2013, arguing that his sentence violated the Eighth Amendment under the United States Supreme Court's holding in *Miller v. Alabama*. (Doc. 11-1 at 65-71.) Petitioner's petition for post-conviction relief was dismissed by the trial court on April 23, 2014. (Doc. 11-1 at 91-92.) Following Petitioner's timely appeal of the trial court's dismissal (Doc. 11-2 at 2-21), the Arizona Court of Appeals granted review of Petitioner's petition, but denied relief. (Doc. 11-2 at 79-81.) In May 2015, the Arizona Supreme Court denied Petitioner's request for further review. (Doc. 11-2 at 88.) Petitioner filed this Petition for habeas review under 28 U.S.C. § 2254 on June 1, 2015. (Doc. 1.)

**II.    Standard of Review**

Under 28 U.S.C. § 636(b)(1), the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." In reviewing a magistrate judge's report and recommendation, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court need not undertake de novo review of a magistrate judge's recommendations that the parties accept as correct. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

When reviewing habeas petitions, federal courts "defer to the last reasoned state court decision." *Woods v. Sinclair*, 764 F.3d 1109, 1120 (9th Cir. 2014). Federal courts may not grant a state prisoner's writ of habeas corpus as to any adjudicated claim unless the adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also, e.g.*, *Woods*, 764 F.3d at 1120; *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013).

### III.    Discussion

The Supreme Court's modern interpretations of the Eighth Amendment have repeated that central to its prohibition of cruel and unusual punishment is proportionality—a right grounded in "the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Miller*, 567 U.S. at 469 (quotation marks omitted) (citing *Roper v. Simmons*, 543 U.S. 551, 560 (2005); *see also Atkins v. Virginia*, 536 U.S. 304, 311 (2002)). In 2012, the Court used this tenet of proportionality to conclude that the "Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. Such a conclusion, the Court reasoned, was required by the multitude of factors that make juvenile offenders different from adult offenders, including (1) a lack of maturity leading to recklessness and impulsivity, (2) a heightened vulnerability to negative influences and outside pressures, and (3) a recognition of the evolution of character that accompanies age. *Miller*, 567 U.S. at 471 (internal citations and quotations omitted). Because "children are constitutionally different from adults for purposes of sentencing," *Miller*, 567 U.S. at 471, sentencing courts must "consider a child's 'diminished culpability and heightened capacity for change' before condemning him or her to die in prison."[1] *Montgomery v. Louisiana*, 136 S. Ct. 718, 726 (2016) (citing *Miller*, 567 U.S. at 479). Four years later, in *Montgomery*, the Supreme Court clarified that the rule announced in *Miller* was a substantive rule of constitutional law to be applied retroactively. 136 S. Ct. at 736.

---

[1]    The *Miller* Court clarified that its holding did not impose a categorical ban on natural life sentences for juveniles, only that the Eighth Amendment "forbids a sentencing scheme that *mandates* life in prison without the possibility of parole for juvenile offenders." 567 U.S. at 479 (emphasis added). In *Montgomery*, the Court explained that life without the possibility of parole is excessive for those "juvenile offenders whose crimes reflect the transient immaturity of youth" and is reserved for "the rare juvenile offender whose crime reflects irreparable corruption." 136 S. Ct. at 734 (internal citations omitted).

1    Here, Petitioner maintains that his natural life sentence violates *Miller* because

2    "the sentencing judge did not consider mitigating factors related to the defendant's age

3    and immaturity but took pains to stress to Crespin and his family that *no matter what*

4    *evidence* they presented Crespin would be sentenced to natural life." (Doc. 1 at 4)

5    (emphasis in original). In the R&R, Judge Willett concluded that the "Arizona Court of

6    Appeals' decision reflects an objectively unreasonable application of *Miller*." (Doc. 21 at

7    1.) Respondents challenge the R&R in its entirety, but its objections can be summarized

8    as follows: (1) that Petitioner's guilty plea precludes habeas review, (2) that the state

9    court's determination of facts was not incorrect or an unreasonable application of *Miller*,

10   and (3) that Petitioner's sentence is nevertheless justified under *Miller* because of the

11   nature of his crime. (Doc. 27.) The Court addresses each objection in turn.

12        **A.    Habeas review**

13        Respondents dispute the R&R's finding that Petitioner's guilty plea does not

14   preclude review of his habeas claim. (Doc. 27 at 2-4.) To support this argument,

15   Respondents refer the Court to several cases that address the limitations prisoners face

16   when challenging guilty pleas.[2] Here, Petitioner is challenging the constitutionality of his

17   sentence, *not* his underlying conviction as Respondents suggests. (Doc. 1 at 1; Doc. 21 at

18   8; Doc. 30 at 2.) The very first sentence of the Petition highlights this point and reads: "1.

19   Petitioner is challenging the sentence imposed by the Pinal County Superior Court in case

20   number CR95021006." (Doc. 1 at 1.) The Court has the authority to hear such challenges

21   under 28 U.S.C. § 2254(a) and thus, will reach the merits of Petitioner's habeas petition.

22        **B.    Factual determinations and application of *Miller* by the trial court**

23        Respondents object to the R&R's conclusion that the Arizona Court of Appeals

24   made an unreasonable determination of the facts in light of the evidence before it when it

25   ――――――――――――――

26   [2]    Respondents cite to *Tollett v. Henderson*, 411 U.S. 258 (1973) (Doc. 11 at 29),
     *United States v. Broce*, 488 U.S. 563, 574 (1989) (Doc. 27 at 2-3), *Bradshaw v. Stumpf*,
27   545 U.S. 175, 186 (2005) (Doc. 27 at 3), and *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th
     Cir. 2004) (Doc. 27 at 3), all of which address the limitations of collaterally attacking
28   guilty pleas and not the issue presented here.

4

determined that Petitioner's sentencing complied with *Miller*. (Doc. 27 at 5-11.) In its Memorandum decision affirming dismissal of Petitioner's post-conviction relief petition, the Arizona Court of Appeals concluded:

> Accordingly, although the trial court told Crespin's family 'there is no sentence to be given other than what's called for in the plea agreement,' the court had the discretion to reject the plea agreement if it deemed the stipulated sentence inappropriate. It is clear from the record the court not only understood there were multiple sentencing options for first-degree murder, but that it considered those options in the context of Crespin's character, age and the nature of the offense before deciding if it would accept the plea agreement.

(Doc. 11, Ex. L.)

Yet, as Judge Willett aptly noted, "[t]he preceding statement incorrectly recounts the record." (Doc. 21 at 9.) As the record shows, Petitioner entered into a plea agreement on March 16, 1998. (Doc. 11-1 at 2-5.) Petitioner's plea agreement specifically noted the sentencing range available for first-degree murder and reflected the parties' stipulation that Petitioner "shall be sentenced to life imprisonment without the possibility of parole." (Doc. 11-1 at 2.) The same day, Petitioner attended his change of plea hearing, at which time the trial court judge explicitly stated that he accepted and entered Petitioner's plea agreement on the record. (Doc. 11-2 at 41.) Petitioner's probation report, which was not made available until May 1998—two months after the court had already accepted Petitioner's plea agreement—includes only a passing mention of the Petitioner's juvenile status as a mitigating factor for consideration. (Doc. 11-1 at 13.)

At Petitioner's sentencing hearing on September 29, 1998, the sentencing judge began by reiterating that the plea agreement to which Petitioner had entered—and that the court had already accepted—included a sentence of life without the possibility of parole. (Doc. 11-1 at 20-22.) The sentencing judge also stated,

> And you understand that the sentence that's provided, no matter what testimony is presented on your behalf, and I

5

> know [defense attorney] wants your family members to talk
> to me, once I've accepted the plea agreement, you'll receive a
> life sentence, which is natural life sentence with no possibility
> of parole, commutation of sentence, et cetera.

(Doc. 11-1 at 20.) Prior to allowing Petitioner's family members to address the court, the sentencing judge again noted, "Before they start, the Court wants to make sure the family members understand that there is no sentence to be given other than what's called for in the plea agreement." (Doc. 11-1 at 30.)

Respondents contend that "[t]he R&R ignores the decisions and reasoning of the state appellate court, and instead focuses its analysis exclusively on the actions of the sentencing court." (Doc. 27 at 12.) But such an argument ignores that the Arizona Court of Appeals' finding that the sentencing judge complied with *Miller* was an unreasonable one given the evidence before it. As Judge Willett concluded, "the trial court made several statements at the sentencing hearing that it [was] bound by the stipulated natural life sentence." (Doc. 21 at 9.) Moreover, the record does not support the Arizona Court of Appeals' conclusion that "the [trial] court not only understood there were multiple sentencing options for first-degree murder, but that it considered those options in the context of Crespin's character, age and the nature of the offense before deciding if it would accept the plea agreement." (Doc. 11-2 at 81.) In fact, the record itself warrants an opposite conclusion. The trial court accepted Petitioner's plea agreement two months before Petitioner's probation report was available for review. At Petitioner's sentencing hearing, the trial court made several statements on the record that clearly indicate it believed itself to be bound by the stipulated natural life sentence, irrespective of the probation report's listing of Petitioner's age as a mitigating factor and any favorable testimony presented on Petitioner's behalf during the sentencing hearing. Thus, the determination that the sentencing court complied with the directives of *Miller* is not an ordinary error to which a degree of deference must be afforded, but one "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts

6

1  with this Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

2       **C.**     **Petitioner's crime**

3       Respondents argue that if the Court were to undertake a de novo review of

4  Petitioner's case, it should deny relief because Petitioner's crime does not warrant a

5  different sentence, even when taking his juvenile status at the time of the crime into

6  consideration as *Miller* requires. (Doc. 27 at 22-25.) The Court declines what amounts to

7  Respondents' invitation to now serve as Petitioner's sentencing judge because the Court's

8  present purpose is limited to ensuring that Petitioner's sentence is in accord with the

9  Constitution. *Harrington*, 562 U.S. at 91 ("The writ of habeas corpus stands as a

10  safeguard against imprisonment of those held in violation of the law.").

11  **IV.**    **Conclusion**

12       Having considered the Petition, Judge Willett's R&R, and Respondents'

13  objections, the Court finds that Petitioner's sentencing was an objectively unreasonable

14  application of *Miller v. Alabama*, 567 U.S. 460 (2012). Accordingly,

15       **IT IS ORDERED:**

16       1.     That the Magistrate Judge's Report and Recommendation (Doc. 21) is

17  **accepted** and **adopted** by the Court;

18       2.     That Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) under 28

19  U.S.C. § 2254 is **granted**;

20       3.     That the "without possibility of parole" provision of Petitioner's life

21  sentence is **vacated** in accordance with *Miller v. Alabama*, 567 U.S. 460 (2012), and

22  *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016);

23       4.     That Petitioner's case is **remanded** to the Pinal County Superior Court for

24  resentencing; and

25  / / /

26  / / /

27  / / /

28  / / /

5.     That the Clerk of Court shall terminate this action and enter judgment accordingly.

Dated this 8th day of November, 2017.

Honorable Steven P. Logan
United States District Judge